(28 Misc. Rep. 640.)

MILLER v. DODGE et al.

(Supreme Court, Special Term, New York County. August, 1899.)

1. TRUSTS—PROFIT BY TRUSTEE.
     While the general rule is that a trustee cannot be permitted to make a profit out of the trust beyond his lawful compensation, such rule may be waived by express agreement, in the absence of fraud.

2. CORPORATIONS—REORGANIZATION AGREEMENT—STOCKHOLDERS' RIGHTS.
     A committee representing the bondholders of an insolvent railroad corporation formulated a plan for its reorganization, which accorded no rights to the stockholders, but permitted them, under certain conditions, to receive bonds and stock in the new company, and provided that a failure to comply with the conditions forfeited all their rights. *Held*, that a stockholder who had not complied with the conditions was not entitled to maintain a suit for the modification of the plan, but must accept or reject the same as a whole.

Suit by George N. Miller against Granville M. Dodge and others for the modification of the reorganization agreement of an insolvent railroad. Motion by plaintiff for an injunction pendente lite. Denied.

E. Ellery Anderson, for plaintiff.

John S. Wise, E. C. Henderson, and Edwin T. Rice, Jr., for defendants.

BEEKMAN, J. The Union Pacific, Denver & Gulf Railway being insolvent, and having made default in the payment of the interest on its consolidated mortgage bonds which became due on December 1, 1893, and which thereafter matured, and a receiver of the road having been appointed, an agreement was entered into for the purpose of effecting a reorganization of the company. This agreement bears date September 18, 1897, and purports to be made between Grenville M. Dodge, George M. Pullman, J. Kennedy Tod, Oliver Ames, Harry Walters, Henry Budge, Henry Levis, and Uriah Herrmann on the one part, they being styled "the committee," and "such holders of the consolidated mortgage bonds of the Union Pacific, Denver & Gulf Railway, issued under a mortgage dated April 1, 1890, as shall become parties to this agreement in the manner hereinafter provided (hereinafter called the 'depositing bondholders')," on the other part. The recital with which the agreement opens details the facts with respect to the condition of the company which I have mentioned, and then adds that "it is necessary that the holders of said consolidated mortgage bonds should unite for their own interests for the purpose of effecting a reorganization of said railway company and its allied interests." The plaintiff stands in the position of a stockholder of the road, claiming rights of participation in its reorganization, founded

upon the above agreement, and it therefore becomes necessary to consider at the outset whether this claim is well founded. It will, of course, be observed from what has been stated that the agreement is, in form, with the bondholders only, and that the reason for its existence is stated to be the necessity which exists for a reorganization for the protection of their interests. This is fully borne out by the context. Briefly stated, the salient provisions of the agreement are that bondholders desirous of becoming parties might become so by depositing their securities with depositaries therein mentioned, for which they were to receive certificates of deposit, and each depositor was to become bound by the agreement as fully as if he had signed it, and, by the act of deposit, assigned to the committee the bonds so deposited. The committee was authorized to take proceedings for the collection of the same, and to that end the largest powers were conferred upon it. Authority was also given to it to frame and adopt a plan or agreement for the reorganization of the company, and the right was reserved to the depositing bondholders of withdrawing from further participation in the agreement and the contemplated reorganization, and of receiving back the securities which they deposited upon payment by them of a certain proportion of the expenses and compensation of the committee, provided they availed themselves of this privilege within 20 days after the first publication in certain designated newspapers of the fact that the committee had adopted a plan. All expenses and outlays incurred by the committee in carrying out the agreement were made chargeable upon the deposited bonds. So far no reference whatsoever is made to the stock of the company, but in the ninth paragraph the stockholders are permitted, within a time to be fixed by the committee, to deposit their stock with a designated depositary, "which will issue certificates for the same in form to be approved by the committee, and which shall hold the same pending the adoption or approval by the committee of a plan or agreement of reorganization." The certificates so issued were to be transferable. The object of this provision is disclosed in the succeeding clause, which provides that if, by any plan or agreement of reorganization adopted by the committee, the stock of the company "shall be included therein, or be recognized thereby," then any holder of such certificates of deposit of stock who, within 20 days after the first publication of the notice of the adoption of the plan, shall surrender his certificates, shall be entitled to withdraw from the plan, and to have returned to him the stock represented by such certificates. In case no such withdrawal is made within the time limited, such certificate holder shall be conclusively deemed to have finally assented to and adopted such plan or agreement, and his rights shall be such only as are conferred by the plan or agreement, subject to compliance with such conditions as such plan and agreement may impose. Care, however, has been taken to avoid giving any status to the depositing stockholders which would vest them with any control over the committee in the performance of their duties with respect to the plan of reorganization, or which would put them in the relation of principals to such committee in dealing with the matters committed to their charge. This is guarded against by a provision that the committee

"contemplates" that any plan of reorganization which may be adopted by it will "recognize said stock," but that it assumes no duty towards the depositors of said stock, or any obligation to recognize the same thereunder, and that, if the same is recognized, the plan or agreement of reorganization may impose any terms as conditions of participation in.the benefits thereof. The right is reserved to the committee at any time of returning to the depositing stockholders the stock which they have deposited.

Enough has thus been stated to disclose the exact nature of the agreement. It is one made by the bondholders, prompted solely by considerations affecting their interests, and designed to secure to them the best protection possible of such interests. The formation of the committee is their act; the nature and extent of its powers and functions are prescribed by them; and the responsibility of the committee, from the very nature of the case, is one which it owes to those creating it, and for the promotion of whose interests it was formed. The committee itself, as such, has no beneficial interest in the subject-matter of the agreement. It is merely an agency, which, in like cases, has been found to be necessary to secure unity of action on the part of.a large number of persons similarly situated, and an acceptable solution of difficulties which, owing to the volume of details and the complexity of the subject, calls for the accumulation and arrangement of facts and the application of expert knowledge. This is what the committee here has undertaken to do for the bondholders, and for no one else, and every stipulation which the agreement contains must be regarded as a means to that end. Bearing this in mind, the solution of the question on which the court is required to pass becomes clearer. That it might become desirable, from the point of view of the bondholders' interests, that there should be a participation of some kind by the stockholders in the reorganization of the company, was clearly recognized by the agreement. Indeed, as. the agreement itself states, some such action was in contemplation, but that is all. There was no promise made or obligation assumed that the plan of reorganization should make any provision whatsoever for them. On the contrary, pains were taken to negative the possibility of any inference that the committee or any other party to the agreement rested under any contractual relation with the stockholders, or under any duty whatsoever towards them, to accord them any recognition whatsoever. There was no such relation or duty. The bondholders assenting to the agreement virtually said to the stockholders: "We intend to reorganize this road in our own interests, and we have appointed a committee to accomplish that object. As at present advised, we expect to ask you to participate in the plan, but we do not in any way bind ourselves to this. It is a matter which purely concerns our own interests, and we may ultimately determine that they would not be subserved by your admission. The matter is one which rests, and must rest, with us alone; and whether or no you are to be recognized, and, if so, the terms upon which recognition will be accorded, must always be of our own choice and determination. Upon this footing you may deposit your stock with the trust company named by us, for which negotiable certificates of deposit will be is-

sued, for purposes of convenience in executing the plan, should your stock be recognized, and the right of withdrawal afforded to you be unexercised." There was, then, no right vested in the stockholders, for there was no duty or obligation to support it; but, legally speaking, whatever they might get out of the reorganization would be of grace, and not of right. The committee has formulated a plan and agreement of reorganization which does recognize the stockholders. It has been duly assented to, and, so far as the stock is concerned, by at least 97 per cent. in value of the stockholders. The plaintiff, however, is not satisfied with it, and has brought this action for the purpose of having two features which it embodies declared void, and eliminated from the plan. One of these is the provision by which the stock is placed in the hands of trustees under what is known as a "voting trust," and the other by which certain pecuniary advantages are secured to certain members of the committee by virtue of their connection with the syndicate which is provided for as a means of financing the execution of the plan. The plaintiff now asks for an injunction pendente lite restraining the defendants from declaring a forfeiture of his stock or rights under the plan.

Under such plan, which has now been substantially carried into effect, a new company was to be organized, and a syndicate, formed for the purpose, was to purchase a large block of the securities of such new company, consisting of first mortgage bonds, first and second preferred stock, and common stock. The object of this was to assure the speedy realization of money necessary to complete the reorganization, and to furnish the new company with available resources for the carrying on of its business. The recognition accorded to the stockholders of the old company was this: Each depositing stockholder assenting to the plan and agreement was conceded the right to purchase and to receive from the syndicate the new bonds and preferred and common stock in certain proportions upon payment to said syndicate of $10 per share of his deposited stock; and, as a condition of his right to make such purchase, he was required, on or before a certain date, to produce his certificates of deposit to the depositary, to be stamped as assenting to the plan, and also to pay the purchase price in installments on the dates and in the amounts in the plan specified. Failure to comply with these conditions involved a forfeiture of all rights under the plan or agreement. The plaintiff has neither presented his certificates to be so stamped, nor has he paid the installments of the purchase money, although the time within which such payments were required to be made has elapsed. Neither has he withdrawn from the reorganization within the time allowed him therefor pursuant to the terms of the original agreement. The position which he takes is not one of repudiation of the entire scheme of reorganization, but rather of two elements only, and he asks the court, not to set aside the whole plan and agreement, but to modify it by eliminating therefrom these provisions to which he takes exception. If that is done, he is willing to come in and participate in its benefits; but, unless that is done, he is in the position of refusing to perform any of the conditions which the committee has imposed. What his attitude is can, perhaps, best be shown by the following

quotation from the amended complaint (paragraph 8), where he says that he is ready and willing to pay the $10 per share of deposited stock represented by the certificates held by him: "provided he receive for the money so to be paid by him securities of the same value as those which, under the said plan, are sold through the said syndicate to members of the reorganization committee: and, further provided, that the new stock to be issued to him in exchange for his former stock shall be freed from the said voting trust, or from so much thereof as this court shall declare to be illegal." But I am unable to perceive what authority there is in the court either to require the committee to make a new plan or to modify the one adopted in any particular. Each element of it is part of a completed whole, and it cannot be said that, if the matters to which the plaintiff objects had not been inserted, the stockholders would have been recognized at all, or, if so, that such recognition would have been granted on so favorable a basis. Nor is it possible to say that, in the absence of these provisions, the bondholders and others who have assented to the plan would have done so. In view of the conclusion to which I have come, it is unnecessary for me to consider here the question whether the voting trust for which the plan provides is valid. Nor is it necessary that I should enter upon a discussion of the extent of the profit, if any, which the syndicate will realize upon its transactions with the depositing stockholders, as this bears only on the claim which the plaintiff makes that he should have received more for his purchase of the new stock and securities than the committee has allowed. It may be said, however, in passing, that the right of members of the committee to become members of the syndicate, and to be pecuniarily interested in matters connected with the road and its reorganization, was expressly conferred both by the agreement of 1897 and by the plan and agreement ultimately adopted by the committee. While the general rule is, as counsel for the plaintiff claims it to be, that a trustee is not permitted to make a profit, beyond his lawful compensation, out of his trust, the rule is one which may be waived, and is subject to modification by express agreement. As I understand it, no fraud is claimed to have been perpetrated by the committee in the performance of its duties. Certainly there is no proof of anything of the kind. It may be that the recognition given to the old stock is slight, and of little value; but then it is to be remembered that the value of such stock was little more than nominal. That at least 97 per cent. of the old stockholders have given in their adhesion to the plan is perhaps the best evidence that the provision made for them is not unreasonable. But, whatever may be said with respect to the particular matters objected to, it is plain that the plaintiff is in no situation to ask the court for the relief which he seeks. The agreement of 1897, with a clearness which could not be mistaken, gave him no right to participate in the benefits of the proposed reorganization, reserving the matter for the uncontrolled action of the committee. That, as well as the terms and conditions on which he should be admitted, if at all, was left to its determination, and, when its plan was submitted, the plaintiff was bound to do one of two things, namely, either to accept it as a whole, or to withdraw from it entirely. He

certainly cannot accept it in part, and reject the rest. Much less can he ask the court to reform it, and compel those interested to accept a plan which the committee has not made. He was bound either to take it as tendered to him or to leave it. After a careful consideration of the case, I am unable to discover that he has any right or equity which entitles him to appeal to the court for protection. The claim that there was some trust relation in the matter between the depositing stockholders and the committee, which was violated, is, I think, upon the facts before the court, entirely untenable. It follows from what has been said that the motion for an injunction must be denied, with $10 costs.

Motion denied, with $10 costs.